1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
                                      AT SEATTLE
7

KIP LEON DAU,
8
                          Plaintiff,                    Case No. C15-1380 RBL
9
        v.                                             ORDER REVERSING AND
10                                                     REMANDING DEFENDANT'S
                                                       DECISION TO DENY BENEFITS
NANCY A. BERRYHILL, Deputy
11  Commissioner of Social Security for Operations,

12                        Defendant.


13          THIS MATTER is before the Court on Plaintiff Kip Leon Dau's Complaint [Dkt. 5] for

14  review of the Social Security Commissioner's denial of his application for supplemental security

15  income ("SSI") benefits.

16          Dau suffers from varicose veins in his right lower extremity; mild degenerative changes

17  in his lumbar spine; bilateral knee and ankle pain; mild degenerative changes in his first

18  metacarpophalangeal joint, right hand and wrist; and obesity.  *See* Dkt. 14, Administrative

19  Record ("AR") 14.  He applied for SSI on February 4, 2011, alleging he became disabled

20  beginning on January 1, 2001.  *See* AR 294.  During the administrative hearing in this matter,

21  however, Dau amended his onset date to January 20, 2011.  *See* AR 48.[1]  Dau's application was

22
    ─────────────────────
23  [1] At the same time, Dau withdrew his application for disability insurance benefits under Title II of the
    Social Security Act because his last date insured was December 31, 2003.  *See* AR 48.

    ORDER REVERSING AND REMANDING
    DEFENDANT'S DECISION TO DENY
    BENEFITS - 1

denied upon initial administrative review and upon reconsideration. *See* AR 112-13, 143-44.

Administrative Law Judge Ruperta Alexis conducted a hearing on September 4, 2013, at which Dau and a vocational expert testified. AR 46-87.

At the conclusion of the hearing, ALJ Alexis decided to have Dau undergo an orthopedic examination to further develop the record. *See* AR 80. Dau underwent that exam, performed by Felicia Skelton, M.D., on November 2, 2013. *See* AR 688-92.

On February 28, 2014, ALJ Alexis issued a decision finding Dau not disabled. AR 22. The Appeals Council denied Dau's request for review on July 2, 2015, making the ALJ's decision the Commissioner's final decision. *See* AR 1; 20 C.F.R. § 416.1481. On August 28, 2015, Dau filed a complaint in this Court seeking judicial review of the Commissioner's final decision. *See* Complaint.

Dau argues that the Commissioner's decision to deny benefits should be reversed and remanded for further proceedings because the ALJ erred (1) in finding that Dau's lumbar impairment was not a severe impairment; (2) in rejecting Dau's symptom testimony; and (3) in rejecting the medical opinions of Mark Papenhausen, M.D., Felicia Skelton, M.D., and Sarah Eichenberger, ARNP. Pl.'s Op. Br. at 1-2.

## DISCUSSION

### 1. The ALJ Erred in Her Step Two Analysis of Dau's Lumbar Impairments

Dau challenges the ALJ's determination at step two of the five-step disability evaluation process that Dau's lumbar impairments were not severe. *See* 20 C.F.R. § 416.920. At step two, the claimant must establish that he has a medically severe impairment, or combination of impairments, that limits his physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(a)(4)(ii) & (c). A medically determinable impairment is considered severe if it

"significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). An impairment is "not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see* Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *1 (July 2, 1996).

The ALJ found that Dau suffered from mild degenerative changes in his lumbar spine, but that this was not a severe impairment. AR 14. The ALJ stated that imaging of Dau's lumbar spine "does not show conclusive evidence of significant degenerative disc disease." *Id.* The ALJ's conclusion is not supported by substantial evidence in the record.

In finding Dau's lumbar impairments non-severe, the ALJ gave incomplete descriptions of several different parts of the record. For example, the ALJ referenced imaging from February 2, 2010, to state that there was not conclusive evidence of degenerative disc disease. *Id.* (citing AR 620). However, the ALJ failed to address the fact that the radiologist who reviewed these images noted that further imaging should be considered. AR 620. Further imaging was performed on February 12, 2010, when an MRI revealed that Dau had "[m]oderately severe degenerative disk disease" at L5-S1 with "a broad-based degenerative disk osteophyte complex extending into the neural foramina . . . ." AR 625.

The ALJ also referenced imaging from February 8, 2013, which revealed only mild facet degenerative changes at L4-5 and L5-S1. AR 14 (citing AR 663). But again, the ALJ failed to address the fact that this same image report noted degenerative disc changes at those discs, along with mild levoscoliosis. AR 663.

While the ALJ was entitled to weigh the medical evidence in determining whether Dau's lumbar impairments were severe, she could not rely on an inaccurate paraphrasing of the medical

record.  *See Reddick v. Chater*, 157 F.3d 715, 722-23 (9th Cir. 1998) (reversing ALJ's decision where his "paraphrasing of record material is not entirely accurate regarding the content or tone of the record").  That is what the ALJ did here, and thus the ALJ erred in his evaluation of Dau's lumbar impairments at step two.

Ordinarily, errors at step two are harmless where the ALJ otherwise finds that the claimant suffers from a severe impairment.  *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) (citing *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)).  But the error may be harmful where the ALJ fails to consider the limitations from a claimant's non-severe impairment when crafting the claimant's residual functional capacity ("RFC").  *See* SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'").

The ALJ's error at step two must be considered harmful.  The ALJ did not discuss Dau's lumbar impairment beyond her step two analysis.  *See* AR 14-20.  There is no indication that the ALJ considered the limitations this impairment caused in crafting the RFC, and therefore she harmfully erred.

## 2. The ALJ Did Not Err in Rejecting Dau's Symptom Testimony

Dau argues that the ALJ erred in rejecting his subjective symptom allegations.  The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited."  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).  The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "'could reasonably be expected to produce the pain or other symptoms alleged.'"  *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014)).  At this stage, the claimant need only show that the impairment could reasonably have caused some

degree of the symptom; he does not have to show that the impairment could reasonably be expected to cause the severity of the symptom alleged. *Id.* The ALJ found that Dau met this step because his medically determinable impairments could reasonably be expected to cause the symptoms he alleged. AR 17.

If the claimant satisfies the first step, the ALJ ordinarily must provide specific, clear and convincing reasons for doing so. *See Trevizo*, 871 F.3d at 678. However, if the ALJ finds affirmative evidence of malingering, she can reject the claimant's testimony on that basis alone. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008) ("The only time [the clear and convincing] standard does not apply is when there is affirmative evidence that the claimant is malingering."); *Schow v. Astrue*, 272 F. App'x 647, 651 (9th Cir. 2008) (The existence of "affirmative evidence suggesting malingering vitiates the clear and convincing standard of review") (internal quotation marks omitted).

Here, the ALJ found affirmative evidence of malingering. AR 18. Dau was examined by psychologist Steven Johansen, Ph.D. on January 15, 2010. AR 398-404. Dr. Johansen conducted a clinical interview and mental status exam, and administered several psychological tests. *See id.* At the conclusion of his examination, Dr. Johansen diagnosed Dau as malingering. AR 400. He opined that Dau was "embellishing his responses in a disingenuous manner in order to demonstrate more severe impairment than he actually experiences." AR 404. The ALJ was charged with weighing the evidence, and was entitled to accept Dr. Johansen's opinion as affirmative evidence of malingering. *See Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995). The ALJ was consequently also entitled to reject Dau's subjective symptom testimony based on this affirmative finding of malingering.

The ALJ did not end her analysis of Dau's testimony there, however. She gave four other

reasons for rejecting Dau's symptom allegations.  First, the ALJ determined that the objective medical evidence did not support Dau's claims.  AR 17-18.  Second, she found that there were inconsistencies between Dau's testimony and his reports to his doctors.  AR 18.  Third, she found that there were inconsistencies between Dau's allegations and his daily activities.  *Id.* Fourth, the ALJ found that Dau's lack of substantial gainful activity between 1999 and the hearing date "erode[d] his credibility."  *Id.*

### a. Lack of Objective Medical Evidence Supporting Dau's Allegations

The ALJ rejected Dau's subjective symptom testimony because she found that the objective medical evidence did not support Dau's claims.  AR 17-18.  The ALJ noted that although Dau testified that he had difficulty walking, Dau was able to walk normally during Dr. Skelton's examination.  *See id.* (citing AR 690-91).  The ALJ further noted that while Dau alleged disabling symptoms in his knees and ankles, imaging showed no issues.  AR 18 (citing AR 662-72).

The ALJ's reasoning here is insufficient on its own.  While an ALJ may consider the medical evidence in evaluating the severity of a claimant's pain, "'an [ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.'"  *Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991)) (alteration in original); *see also* 20 C.F.R. § 416.929(c)(2).  The records the ALJ cited may be relevant to the scope of Dau's limitations, but they cannot on their own support rejecting his testimony.

### b. Inconsistencies between Dau's Hearing Testimony and Other Reports

The ALJ next rejected Dau's allegations because of inconsistencies between his hearing testimony and his other reports.  AR 18.  An ALJ may discount a claimant's testimony based on

inconsistencies between his testimony and the other evidence.  *See Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002); *Smolen*, 80 F.3d at 1284.  The ALJ's discussion here does not reveal clear inconsistencies that would support her rejection of Dau's symptom testimony.

The ALJ found inconsistency between Dau's testimony that he had difficulty dressing and bathing and one doctor's note that Dau did not need help with self-care.  AR 18.  Dau testified that he has trouble getting dressed and showering.  AR 68.  During a psychological evaluation, Andrea Shadrach, Psy.D., reported that Dau "does not need help with self-care."  AR 586.  Contrary to the ALJ's conclusion, there is no inherent inconsistency between these statements.  Dau did not testify that he needed help dressing and showering, merely that it was "a hard task."  AR 68.

The ALJ found further inconsistencies between Dau's testimony on his ability to cook, grocery shop, and do laundry, and Dr. Shadrach's report.  AR 18.  But again, the ALJ's discussion does not demonstrate any true inconsistencies.  Dau testified that he cooks for himself, but that he largely eats Top Ramen.  AR 67.  Dr. Shadrach reported that Dau handles his own cooking.  AR 586.  Dau testified that he needs help with his laundry, such as getting wet clothes out of the washer.  AR 67.  Dr. Shadrach reported that Dau handles his own laundry.  AR 332.  Dau alleged that he goes grocery shopping two to three times a month for a half hour at a time.  AR 333.  Dr. Shadrach reported that Dau handles his own grocery shopping.  AR 586.  The ALJ did not explain her reasoning here, and none of these supposed inconsistencies are so clear and convincing as to justify rejecting Dau's testimony without further discussion.  The ALJ thus erred in rejecting Dau's testimony on this basis.

c.      **Inconsistencies between Dau's Allegations and His Daily Activities**

The ALJ further rejected Dau's allegations because they were inconsistent with his daily

1  activities.  AR 18.  An ALJ may use a claimant's activities to form the basis of an adverse

2  credibility determination if they "contradict [her] other testimony."  *See Orn v. Astrue*, 495 F.3d

3  625, 639 (9th Cir. 2007).  Again, though, the ALJ's discussion fails to show any clear and

4  convincing inconsistencies.

5        Dau testified that he suffered from "constant, severe pain that interferes with his

6  functioning," but also acknowledged that he "goes outside frequently, regularly attends his

7  medical appointments, shops in stores for groceries, goes to his community center regularly,

8  draws, and reads books daily, among other similar activities."  *Id.* (citing AR 333, 359).  These

9  activities are the bare minimum elements of a normal life, and are not inconsistent with Dau's

10  suffering from constant, severe pain.  *Cf. Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)

11  ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping,

12  driving a car, or limited walking for exercise, does not in any way detract from her credibility as

13  to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled.")

14  (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  The ALJ erred in rejecting Dau's

15  testimony on this basis.

16        **d.**    **Lack of Substantial Gainful Activity**

17        The ALJ last rejected Dau's symptom testimony because he had not engaged in

18  substantial gainful activity since 1999.  AR 18.  An ALJ may discount a claimant's testimony

19  when his work history suggests reasons other than disability for the claimant's failure to work.

20  *See Thomas*, 278 F.3d at 959 (upholding ALJ's rejection of plaintiff's symptom testimony where

21  she had a poor work history and showed "little propensity to work in her lifetime").  Here,

22  however, the ALJ provided no explanation for her reference to Dau's sparse work history.  This

23  was therefore not a clear and convincing reason to reject Dau's symptom testimony.

### e. Harmless Error

Although the ALJ included erroneous reasons for rejecting Dau's symptom testimony, Dau has failed to show harmful error. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (holding that the party challenging an administrative decision bears the burden of proving harmful error) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407-09 (2009)). An error is harmless "where it is 'inconsequential to the ultimate disability determination.'" *Molina*, 674 F.3d at 1115 (quoting *Carmickle*, 533 F.3d at 1162). The ALJ reasonably found affirmative evidence of malingering, so her inclusion of erroneous reasons for rejecting Dau's symptom testimony was inconsequential and therefore harmless.

### 3. The ALJ Erred in Assessing the Medical Evidence

Dau argues that the ALJ erred in assessing the opinions of Mark Papenhausen, M.D., Felicia Skelton, M.D., and Sarah Eichenberger, ARNP. The Court addresses each in turn.

### a. Dr. Papenhausen

Dr. Papenhausen examined Dau on June 18, 2013, ostensibly as part of a new patient evaluation. *See AR 679-81*. After reviewing images and examining Dau, Dr. Papenhausen opined that Dau suffered from varicose veins with inflammation in his right leg. AR 681. Dr. Papenhausen stated that Dau's symptoms from this condition "clearly interfere with his activities of daily living," but gave no further specifics as to any limitations. *See id.*

The ALJ gave little weight to Dr. Papenhausen's opinion that Dau's condition interfered with his activities of daily living. AR 20. ALJ Alexis gave two reasons for this determination: (1) Dau's statements and the record as a whole contradicted the opinion, and (2) Dau had not been compliant with treatment because he "failed to wear his compression stockings recently." *Id.*

An ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when such a physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. The ALJ's reasons here fall short of this standard.

First, as discussed above, the ALJ erred in finding that Dau's statements were inconsistent with his ability to perform activities of daily living. *See supra* Part 2.c. The ALJ's conclusion that Dau's statements contradicted Dr. Papenhausen's conclusion that Dau's symptoms interfered with his daily activities was equally erroneous.

Second, the ALJ's statement that Dau has not been compliant with treatment is not entirely accurate, nor is it a valid reason to disregard Dr. Papenhausen's opinion. Dr. Papenhausen reported that Dau had "worn compression stockings in the past without relief in [his] symptoms," and that Dau had not worn those stockings recently. AR 679. The fact that compression stockings had not relieved Dau's symptoms makes his failure to wear them largely irrelevant. Moreover, it has no bearing on the validity of Dr. Papenhausen's opinion, particularly when Dr. Papenhausen gave that opinion while fully aware that Dau had not been wearing compression stockings. The ALJ thus erred in her rejection of Dr. Papenhausen's opinions.

### b. Dr. Skelton

Dr. Skelton examined Dau at the ALJ's request on November 2, 2013. AR 688. Dr. Skelton diagnosed Dau with "[a]xial low back pain without clear evidence of neurologic impairment," varicose veins in his right leg, and a "[c]losed head injury with likely posttraumatic headache." AR 692. She opined that Dau could stand and walk for about six hours in a normal eight-hour work day; sit for about six hours in a normal eight-hour work day; lift/carry 50

pounds occasionally and 25 pounds frequently; and frequently climb, balance, stoop, kneel,

crouch and crawl. *Id.*

The ALJ rejected Dr. Skelton's standing and walking restrictions because she found that

(1) they were not supported by Dr. Skelton's findings, and (2) they were contradicted by Dau's

daily activities.[2] AR 19. Because Dr. Skelton was an examining physician, the ALJ was

required to give specific and legitimate reasons for rejecting her opinions. *See Lester*, 81 F.3d at

830-31.

The ALJ's first reason for rejecting Dr. Skelton's standing and walking opinion is too

vague to withstand scrutiny. *See McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989)

(holding that ALJ's rejection of doctor's opinion on the basis that it was contrary to clinical

findings was "broad and vague, failing to specify why the ALJ felt the treating physician's

opinion was flawed"). At most, the ALJ referred to Dr. Skelton's observations that Dau could

walk into the exam room without assistance, and that his gait was grossly within normal limits.

*See* AR 17 (citing AR 690-91). But Dr. Skelton did more than just look at Dau's gait in reaching

her conclusions. She reviewed Dr. Papenhausen's notes and Dau's medical images, and

performed strength and coordination testing. AR 688, 690-91. The ALJ failed to explain how

Dr. Skelton's two observations about Dau's gait eroded support for Dr. Skelton's interpretation

of her examination findings. *See* AR 17. The ALJ thus erred in rejecting Dr. Skelton's standing

and walking restrictions on this basis.

The ALJ's second reason for rejecting Dr. Skelton's standing and walking opinion, that it

---

[2] The ALJ rejected other parts of Dr. Skelton's opinions, but Dau only challenges rejection of the standing and walking restrictions. *See* Pl.'s Op. Br. at 11-12. The Court accordingly does not address the other parts of Dr. Skelton's opinions.

was contradicted by Dau's daily activities, fails for the same reason her rejection of Dau's symptom testimony on this basis failed. *See supra* Part 2.c. The possibility that Dau could stand or walk long enough to leave his house or go grocery shopping does not contradict Dr. Skelton's finding that he was limited to standing and walking for four hours in an eight hour workday. The ALJ thus erred in rejecting Dr. Skelton's opinions.

### c. Ms. Eichenberger

Ms. Eichenberger treated Dau for over a year, from January 2010 until at least March 2011. *See* AR 495, 569-70. In January 2011, she completed a functional assessment in which she opined that Dau was unable to stand for more than 15-20 minutes at a time, that he could sit and stand for a half hour in an eight hour day, and could lift five pounds occasionally and frequently. AR 577-78.

The ALJ rejected Ms. Eichenberger's opinions because she was not an acceptable medical source. AR 20; *see* 20 C.F.R. § 416.902(a). The ALJ was free to disregard Ms. Eichenberger's opinions on this basis to the extent they were attempts to provide medical diagnoses. *See Tobeler v. Colvin*, 749 F.3d 830, 833 (9th Cir. 2014) ("[L]ay witness testimony is 'incompetent' when it consists of a medical diagnosis, because 'medical diagnoses are beyond the competence of lay witnesses' to make.") (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)).

The ALJ was nonetheless required to consider Ms. Eichenberger's testimony to the extent it concerned Dau's ability to work. *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). To reject Ms. Eichenberger's testimony, the ALJ was required to give germane reasons that were specific to the witness. *See id.*

The only reason the ALJ gave for rejecting Ms. Eichenberger's opinions was that her

records did not show that she had "completed a thorough physical exam," and had instead just completed a boilerplate form. AR 18. The ALJ's conclusion here is not supported by substantial evidence. Ms. Eichenberger saw Dau multiple times while she was treating him. *See* AR 495-569. Her records indicate that she performed musculoskeletal and neurologic evaluations during her treatment. *See, e.g.*, AR 566, 571. The ALJ's reason for rejecting Ms. Eichenberger's opinions is not supported by substantial evidence in the record, and the ALJ therefore erred in her rejection of Ms. Eichenberger's opinions.

### d. Harmful Error

The ALJ harmfully erred in her rejection of the opinions of Dr. Papenhausen, Dr. Skelton, and Ms. Eichenberger. None of the reasons she gave for rejecting these opinions were valid. Each of the opinions was relevant to Dau's claimed symptoms and limitations. The Court cannot say that the ALJ would have reached the same disability determination had she properly considered these opinions. Consequently, the ALJ harmfully erred in assessing the medical evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055-56 (9th Cir. 2006).

### 4. Scope of Remand

Dau asks the Court to remand for further proceedings. Dkt. 35 at 15-16. When the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted).

The Court agrees that the appropriate remedy here is to remand the matter for further proceedings. On remand, the ALJ should reevaluate Dau's lumbar impairment at step two, reassess the opinions of Dr. Papenhausen, Dr. Skelton, and Ms. Eichenberger, and conduct further proceedings as necessary to determine Dau's disability status.

# CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

DATED this 16th day of August, 2018.


Ronald B. Leighton
United States District Judge